## VANCE'S HEIRS v. ROCKWELL et al.

1. A writ of error will not lie to the determination of a court acting in a summary proceeding, not according to the course of the common law.

2. By amendment of the Organic Act of March 2, 1863, limited equity jurisdiction was conferred upon courts of probate, and provision was made by the legislature, for writs of error to, and appeals from, the final decisions of such courts.

3. A writ of error may issue from this court, to the decree of a probate court, upon a petition of an administrator for leave to sell the real estate of his intestate, for the payment of debts.   In such case the probate court sits, not in the exercise of probate jurisdiction merely, but as a court of equity.

4. A variance between the writ of error and the transcript of the record as to the character of the parties to the suit may be amended in this court, under the statute, R. S. p. 50, § 12.

5. What is sufficient to reverse a judgment can never be cause to quash a writ of error.

### *Error to Probate Court of Gilpin County.*

Mr. L. C. ROCKWELL, for defendants in error, now moved to dismiss this writ of error :

*First.* Because a writ of error does not lie to a decision of the probate court, adjudicating upon the estates of deceased persons.  (Second cause the same.)

*Third.* Because the court, at the time it rendered its decision, was proceeding under the express provisions of the statute and not according to the course of the common law.

*Fourth.* Because the plaintiffs in error were not parties to the judgment sought to be removed to this court, and nothing appears in the record to show by what right they prosecute this case.

*Fifth.* Because there is nothing to show in the paper purporting to be a record in this proceeding, that the supposed judgment was ever given by any court known to the law, nothing to show that this controversy was ever decided by the probate court of Gilpin county," etc.

Messrs. BELFORD and REED, *contra.*

WELLS, J. The case of *Hadley* v. *Fish*, decided at the February term of 1876 (*ante*, p. 51), is authority to say that error does not lie to the determination of a court, acting in a summary proceeding, not according to the course of the common law.

No other question was presented in that case.  The considerations arising upon the present motion are not precisely analogous.

The probate courts of the late Territory as originally constituted were invested with jurisdiction of the probate of wills, the administration of decedent estates, and the like, and no special process of review was furnished by the act of congress. Apparently it was supposed that this might with safety be left to the wisdom of the legislative assembly. Accordingly by section 6, of the act of Nov. 7th, 1861, R. S. p. 525, concerning probate courts, an appeal was allowed to the district court from acts and determinations of the probate judges acting in the capacity of judges of probate, whether acting judicially or ministerially.

The case of *Cass* v. *Davis*, 1 Col. 45, countenances the validity of the legislation in question.

By the act of congress of March 2, 1863, amendatory to the Organic Act, chancery and common law jurisdiction, within certain limits, was conferred upon the probate courts, in common with the supreme and district courts, and provision was made for writs of error and appeals from the "*final decisions*" of the probate as well as the district courts, to the supreme court. We are of opinion, that writs of error were intended to be given as well to decrees in equity as to judgments at law ; the phraseology "*final decisions*" includes the adjudication of both jurisdictions, and while apt to describe the determinations of courts of law, only, is not the one usually chosen for that purpose ; the departure from the common usage, in this instance, seems to be studied, rather than inadvertent.

The same phraseology was used in the original act (Organic Act, § 6), and we have legislative authority to say that in that instance both decrees and judgments were intended. The 45th section of this act concerning practice in civil cases, Acts 1st Sess. 286, R. S. 514, provides that "in all cases where a judgment or decree shall be rendered either at law or in chancery against two or more persons, either one of said persons shall be permitted to remove said suit to the supreme court by appeal or writ of error."

The leading purpose of this section is to give relief from the rule of the common law, which requires all against

whom the judgment is given to unite in the writ of error, and the writ of error is recognized as an appropriate process already existing, for the review of both judgments at law and decrees of equity.

The same conclusion is inevitable from a consideration of the provisions of section 47 of the same act. It is there provided that "writs of error shall not be brought after five years," "but when the person thinking himself aggrieved by any *judgment* or *decree* * * * shall be an infant, etc.," the period of disability shall be excluded from the computation : The word *decree* is the proper and usual term to describe the adjudication of a court of equity. The section clearly recognizes the writ of error as a remedy already provided, and available both at law and in equity. But there was never any statute other than the 45th section of the Practice Act before quoted, which can be appealed to, as conferring the writ in equity causes. If, therefore, it existed at all as the means for the review of decrees in equity, it was solely by virtue of the provisions of the Organic Act.

Moreover if we rely on the provisions of the 45th section of the Practice Act, as the source of the jurisdiction to issue the writ in equity causes, then there never was jurisdiction in the supreme court to review decrees in equity, save at the instance of one out of several aggrieved persons.

The section does not allow the writ where the decree is given against one only, nor to all where there are many.

But it is believed that the opinion of the profession has always sustained the writ to all decrees in equity, both at the suit of a sole defendant, and at the suit of those aggrieved, however numerous. There are many reported cases where the writ was entertained without question. *Wise* v. *Brocker*, 1 Col. 550 ; *Machbeauf* v. *Clements*, 2 id. 37 ; *Buck et al.* v. *Fisher et al.*, id. 182 ; *Denver & Swansea Railway Co. et al.* v. *Denver City Railway Co.*, id. 673 ; *Palmer* v. *Cowdrey*, id. 1 ; *Walker* v. *Tiffin Mining Co.*, id. 90 ; *Cook* v. *Rice*, id. 131.

The case of *Liss* v. *Wilcoxen*, 2 Col. 7, is authority to say, that affirmative action by the legislative assembly was unnecessary, and *Livingstone* v. *Livingstone*, 24 Ga. 379, is to the same effect. By virtue of the provisions of the amendment of March 2, 1863, to the Organic Act the writ of error lies to review the adjudications of the district court, when sitting in equity, the same section gives the same process, as the means of relief against errors committed by the probate court, exercising like jurisdiction, and this conclusion also, it is believed, is supported by the concurring opinion of the profession. *Smith* v. *Remington*, 1 Col. 53; *Jensen et al.* v. *Brown*, 2 id. 694, are examples.

The conclusion seems a just one, therefore, that by virtue of the Organic Act, the writ of error lay out of the supreme court of the late Territory, to review the decrees, both of the district court and of the probate court, when sitting for the exercise of the enlarged jurisdiction conferred by the act of March 2, A. D. 1863. Now the decree of the probate court, which is complained of in the present case, was given upon petition of the administrator for leave to make sale of the real estate of his intestate for the payment of debts; in giving which decree, as it would seem, the probate court sat, not in the exercise of probate jurisdiction merely, but as a court of equity; as appears from the following consideration: (1) By the original statute of wills (Acts 1st Sess. 428, §§ 94–95), this jurisdiction was conferred upon the district court exclusively; and we are not aware of any statute, prior to the amendment of the Organic Act by the act of March 2, 1863, which assumed to confer it upon the probate court. By the revision of 1868, the jurisdiction is conferred upon the district and probate courts concurrently.

Doubtless, the end to be accomplished by the proceeding is of such character, that if the legislature had seen fit so to do, the jurisdiction might have been conferred upon the probate court originally.

But, inasmuch as it was withheld so long as that court

exercised probate jurisdiction exclusively; and was afterward conferred upon the probate court and district, concurrently, an inference may fairly be founded, that the purpose in this legislation was to give the new jurisdiction to the probate court, not as a court of probate, but sitting for the exercise of the enlarged jurisdiction created by the act of March 2, 1863.

(2) The form of the proceeding is regulated entirely by the statute, and it is there declared that it shall conform as nearly as practicable to the proceedings of courts of chancery in like cases. If this decree now complained of had been given in the district court, no one would have questioned the jurisdiction of the supreme court to review it by writ of error. How then can it be said that error shall not lie to the probate court? The proceeding, whether in the district or probate court, is identical in form, spirit and purpose; and the statute which authorized the writ of error to the decrees of the district court gave the same relief against error in the decree of the probate court, exercising equity powers, as we have already seen.

(3) A more conclusive argument may be drawn from the provisions of the statute regulating this proceeding.

By the act of Nov. 7th, A. D. 1861 (Rev. Stat. 521, § 6), the probate court was required to sit on the first Monday of every month. By the act of March 11, 1864 (Rev. Stat., p. 525), which was the first act passed to regulate the enlarged jurisdiction of the probate court, it was provided that "terms of the probate court for the transacting of business arising under this act shall be as now provided by law for the transaction of probate business."

By the act to amend the last act (Feb. 8, 1865, Rev. Stat. 527), six terms of the probate court were provided to be held first Monday in alternate months. The act does not expressly devote the terms so provided to the trial of causes at common law, but looking to the whole act, it is quite apparent that this was the intention; the terms of that court as a probate court remaining as declared by the act

of 1861. This, it is believed, accords with the practice which was almost everywhere observed.   For the exercise of its probate jurisdiction the court is understood to have held its terms in almost every county of the Territory, on the first Monday of each month ; and for the exercise of its jurisdiction as a court of common law and equity, on the first Monday of each alternate month, as prescribed by the first section of the act last quoted.

Now reverting to the statute which regulates the proceedings where the personal representative applies either in the district or probate court for leave to sell the real estate of his decedent (Rev. Stat. 671), it is provided by section 98 that upon the filing of the petition, summons shall issue returnable upon the first day of the term of the court next succeeding the date thereof; provision is made for a notice by publication to non-resident defendants, but as in the act to regulate proceedings in chancery in the district court, it is declared that this notice shall not dispense with the issuing of summons or the usual effort to make service thereof, the issuing of summons and the publication of notice are both essential to the jurisdiction, and the two must conform and run together; the summons must be returnable to the same term at which, by the published notice, the defendant is required to appear, as the summons is expressly required to be made to the next succeeding term, and would be void if any term intervened, *Elec* v. *Wait*, 28 Ill. 72 ; so if the publication require the defendant's appearance at any other term than that next succeeding, it is entirely ineffectual.

Now by section 103 of the same statute, it is provided that if the first publication of this notice be not at least sixty days before the day named for the defendant's appearance, the cause shall stand continued.   But in a court which, like the probate court, sits on the first Monday of every month, and whose vacations can in no case much exceed the limit of thirty days, a lawful publication, under this section, would have been an impossibility.

It is manifest, therefore, that the act confers the jurisdiction upon the probate courts, not as such, but as courts of equity.

It was also manifestly the legislative purpose to assimilate the proceeding to that of the court of equity in other like cases.   It may be said to be a new jurisdiction conferred upon the courts of equity with the ultimate purpose to facilitate the settlement of decedent estates and avoid multiplicity of actions.

To deny the writ of error in such case to the decrees of the probate court, is to deny it to all decrees in equity given in that court, and perhaps to all those given in the district court, save in the single case expressly provided for in the 45th section of the Practice Act.

What was said in argument touching the limitations upon the equity jurisdiction of the probate court of Gilpin is not thought to be entitled to controlling effect.   Until the act of 1870, enlarging the jurisdiction of the Arapahoe court, was passed, the court was under the same limitation in every county in the Territory.   The jurisdiction to authorize the sale of the real estate of decedents was possibly the sole instance in which the probate court exercised equity powers, save in the cases mentioned in section 41 of the act of Feb. 8, 1865; but that jurisdiction was manifestly conferred upon them sitting as courts of equity and not as probate courts, and whether the writ of error shall lie cannot be determined by considerations applicable alone to the county of Gilpin.

What has been said disposes of the first, second and third grounds assigned in the motion.   As to the fourth ground, it is unquestionable, that if the writ of error lies at all, the heirs are the proper persons to prosecute it; but the present writ is variant from the record transmitted. It recites a proceeding between Emory J. Vance, Anna E. Vance, Leroy R. Vance and Maria H. Merrill, heirs at law of David C. Vance and Lewis C. Rockwell and John T. Maroney, whereas, according to the record, certified to us,

the proceeding was between John T. Maroney, not in his individual capacity, as the writ asserts, but as administrator, upon the one side, and Emory J. Vance, Mrs. David C. Vance and the unknown heirs of David C. Vance, deceased, upon the other.

Apparently impressed with the absurdity of instituting affirmative proceedings in the names of unknown persons, the persons who framed the writ sought to avoid this by reciting the proceeding below as if those who join in the present complaint had been named as parties in the decree complained of. But this is inadmissible; the decree and proceedings must be recited according to the fact; and the character in which the plaintiffs in error sue, as heirs or otherwise, may be asserted in the *ad injuriam* clause.

Under section 12 of the Statute of Amendments, the writ may, in these respects, be amended here if counsel desire.

The fifth ground of the motion is sufficiently answered by the case of *Skinner* v. *Beshoar*, 2 Col. 384; what is sufficient to reverse the judgment can never be cause to quash the writ of error

*Motion denied.*