SLOAN ET AL. V. STRICKLER.

1. ERROR, WRIT OF — WHEN LIES — SALE OF DECEDENT'S LAND.— Constitution, article 6, section 23, and General Laws, chapter 23, section 8, conferring jurisdiction on the supreme court to review by writ of error all final judgments or decrees of county courts, includes a decree for the sale of land of a decedent to pay debts.

2. COURTS — COUNTY COURTS — PROBATE JURISDICTION — RETURN OF SUMMONS.— Proceedings for the sale of land to pay debts of a decedent, under Revised Statutes, 1868, chapter 90, section 98, are statutory proceedings in aid of the settlement of estates, and within the probate jurisdiction of the court; and a summons instituting such proceedings might, in 1877, be returned to any lawful term of the county court of Arapahoe county, whether one of the bimonthly terms for the transaction of common-law and equity matters, as provided for by Acts 1874, page 217, or a regular monthly term held for probate business.

3. EXECUTORS AND ADMINISTRATORS — SALE OF DECEDENT'S LAND — PUBLICATION OF WRIT.— Under Revised Statutes, 1868, chapter 90, section 103, providing that if, in such proceedings for the sale of land, a notice to non-residents be not first published at least sixty days before the return day of the summons, the cause shall stand continued until the next term, a decree can be rendered at the succeeding term, after the lapse of sixty days from the first publication of the notice, though that time had not expired when the term at which the decree was rendered began.

*Error to Arapahoe County Court.    On Rehearing.*

IN February, 1874, Thomas M. Sloan died in Arapahoe county, Colorado, leaving a wife, certain children and grandchildren him surviving. At the time of his death he was seized of certain lands in said county, and by his last will and testament he devised certain parcels thereof to his wife, children and grandchildren, respectively, leaving other parcels undevised. His will having been proved, the executors therein named resigned their trust; and his wife, all his children, and one Driscol, the principal creditor of the estate, declining to administer, James M. Strickler was, by the probate court of said county, appointed and duly qualified as administrator with the will

annexed. Strickler proceeded with the administration for about three years, when it was found to be necessary to sell some of the real estate to discharge the just debts allowed against the estate, which at that time amounted to about $5,000 more than the value of the personal estate; and thereupon, on February 21, 1877, the administrator presented his petition to said probate court for authority to sell the undevised lands, and also the devised lands, if necessary, for the purpose aforesaid. The widow, children and grandchildren, devisees, and others supposed to be interested therein, were made defendants; the grandchildren were minors. Summons was issued and served on the resident defendants, who appeared and answered. An *alias* summons was issued on April 3d, returnable on the first Monday of May, and, an affidavit of non-residence being filed, the first publication for the non-resident defendants was made April 7th; the last on May 6th. The *alias* summons was returned on June 4, 1877, showing service on all but the non-resident defendants. On June 6th one Lorin A. Staley appeared and answered as guardian *ad litem* for the grandchildren, but his appointment as such does not appear of record.

On June 23, 1877, a hearing was had before the court, and the whole lands in the county — first the undevised, and the remainder afterwards, if required — were decreed by the court to be sold for the purpose aforesaid. The whole was sold for $6,000; and, report thereof being made, the sale was confirmed on July 30, 1877, and the final account of the administrator was approved.

The said grandchildren, devisees, bring this record here upon writ of error, and ask a reversal of the decree directing the sale of the said real estate. As the opinion of the court does not notice the errors assigned antecedent to the filing of the petition for the sale of the real estate, the foregoing statement, it is believed, will be found sufficient for a correct understanding of the case.

Messrs. STEELE & MALONE, for plaintiffs in error.

Messrs. HARMAN & COVER, W. B. HARRISON, E. T. WELLS and MARKHAM & DILLON, for defendant in error.

PER CURIAM.   Upon this rehearing the principal questions presented for our consideration are: (1) Do writs of error lie from the supreme court to the county court in cases of this kind? (2) Was there a May term of the county court of Arapahoe county for 1877, provided by law, to which a summons issued under section 98, chapter 90, Revised Statutes 1868, commonly called the "Statute of Wills," might be made returnable? (3) If the foregoing questions be answered affirmatively, were the proceedings sought to be reviewed in this case regular, and was the judgment or decision of the court therein valid, or was the same prematurely rendered?

Since the adoption of the constitution (art. 6, § 23), and the passage of the county court act (Gen. Laws, ch. 23, § 8), which went into effect June 20, 1877, there is no longer room for reasonable doubt that writs of error lie from the supreme court to every final judgment or decree of the county courts, including cases of this kind. It may still be difficult to determine what matters are to be considered in the record when cases like this are sought to be reviewed upon writ of error.   The opinion in the case of *Vance's Heirs v. Rockwell*, 3 Colo. 240, pronounced at the April term, 1877, is direct authority to the effect that cases of this kind may be reviewed upon error, on the ground that the judgment or decision is final.   It was the precise point before the court; but neither that opinion nor the subsequent ones (3 Colo. 293, and 4 Colo. 47) expressly decide what proceedings, if any, in the course of administration antecedent to filing of the petition, may be reviewed upon a writ of error sued out for the purpose of testing the validity of the decree of sale; and, inasmuch as we find no error in such

antecedent proceedings, we see no occasion at this time
to express any opinion on that question.

In the case of *Vance's Heirs, supra,* the opinion was
expressed that the law still remained in force providing
terms of the probate court commencing on the first Mon-
day of each month, notwithstanding six terms were pro-
vided by the act of 1865 for the first Monday of alternate
months; but it was considered in the opinion that the
regular monthly terms of the court were for the exercise
of its probate jurisdiction, and not for its enlarged com-
mon-law and chancery jurisdiction, and proceedings un-
der the statute of wills to sell real estate, etc., were classed
as belonging to such enlarged jurisdiction.   The act of
March 11, 1864, was cited as indicating that different
terms of court were intended for different kinds of busi-
ness, whereas by section 8 of that act the terms of the
probate court were expressly declared to be the same for
the supposed new jurisdiction as for the former probate
business; and no act has been cited providing separate
terms of the probate court for probate business prior to
the act of March 22, 1877, which did not go into effect till
the 20th of June following.   But we must not be under-
stood as holding that the monthly sittings of the county
judges on the last Monday of each month, as required by
the last-mentioned act, are to be regarded as terms of
court to which process issued under section 98 of the stat-
ute of wills must be made returnable.   The learned judge
who delivered the opinion in *Vance's Heirs, supra,* seemed
to think it necessary to make this distinction regarding
separate terms for different jurisdictions in order to es-
cape the conclusion announced in *Hadley v. Fish,* 3 Colo.
51, to the effect that writs of error do not lie to review
judgments of a court in a summary proceeding not in
accordance with the course of the common law.   But it
seems to us that it was only necessary then, as now, to
hold that a decree for the sale of real estate to pay debts

under the statute of wills was a final judgment or decision in order to render such matter reviewable upon error. The amendment to the organic act of 1863, section 3, also the act of 1864, page 119, section 14, made the writ of error expressly applicable to such judgments and decisions of the probate courts. No matter what may have been the scope of the writ of error at common law, it was as competent for the territorial legislature to make the writ applicable to judgments in proceedings of a summary or statutory character as to judgments at law or decrees in equity.

By the act of 1862, page 97, the territorial legislature conferred jurisdiction of the kind of proceedings now under consideration, though by a different procedure, exclusively upon the probate courts, without any mention as to change of terms of the court; and at that time the probate court had no chancery jurisdiction, nor any jurisdiction above that of a justice of the peace except its probate jurisdiction. The enlarged jurisdiction was not conferred until after the amendment to the organic act in 1863. Thus it is seen that the legislative intent was clearly against the supposed distinction, and supports the theory that proceedings of this kind are not to be classed as a part of the enlarged common-law and chancery jurisdiction of the probate courts. While we thus depart from the reasoning of the learned judge in the case of *Vance's Heirs*, we nevertheless uphold the opinion so far as the essential points therein decided are concerned. We accept it as decisive to the effect that decisions of the county courts in proceedings under the statute of wills for the sale of real estate to pay debts of decedents are final judgments; that they may be reviewed by this court upon writ of error; and also that prior to June, 1877, terms of the probate court for the first Monday of every month were provided by statute. By an examination of the various acts it will be found that the probate courts at these terms were not restricted to the exercise of their probate

jurisdiction, but that they were required to continue open for all business pending before them. Act 1861, p. 383; also Rev. St. 1868, ch. 71, § 6. In our opinion, the act of 1874, page 217, providing bi-monthly terms for the probate courts of Arapahoe county, does not have the effect to abolish the monthly terms nor to change their character or purpose. As we have seen, it has been held that the act of 1865, page 97, did not have such effect. We do not hold that proceedings of the kind now under consideration to sell real estate to pay debts, etc., are part of the common-law or equity jurisdiction of the county courts, but that such proceedings are instituted and carried on solely in aid of the settlement of estates of deceased persons, and are closely allied to probate proceedings.

Previous to the revision of 1868 such proceedings were commenced by publication of notice merely. Statutes of Wills, 1861, p. 427, § 94 *et seq*. After the revision they were commenced by summons, and certain persons were required to be made defendants, but the object of the proceeding was always the same. It was to divest the title to real estate in which such defendants were supposed to be interested as heirs, devisees or otherwise, and so the final judgment or decision to be rendered was most important. Under the constitution, as well as under the organic act, the proceeding may be said to be purely statutory; but this in no way militates against the theory that it is within the jurisdiction of the county court at any term when such court is lawfully convened. The constitution, article 6, section 23, expressly limits the civil jurisdiction of the county courts to be conferred by law to cases where the debt, damage or claim or value of property involved shall not exceed $2,000; but as to the settlement of estates of deceased persons, as well as all matters of probate, etc., the jurisdiction is unlimited. From this the conclusion is almost irresistible that a proceeding of the kind now under consideration is not to be

classed under the common-law or equity jurisdiction of the county courts, but that it must be considered as a special statutory proceeding directly connected with the probate jurisdiction. • Any other conclusion renders the statute inoperative in the county court when the property, as in this case, exceeds the value of $2,000. North, Prob. Pr. ch. 38; *Water-power Co. v. Webster*, 26 Ill. 233; *Bennett v. Whitman*, 22 Ill. 449.

One further question remains to be considered: Were the proceedings regular and was the judgment valid, or was the same prematurely given? The preliminary steps, such as the filing of a proper petition, the issuance of summons, *alias* summons, with proper effort to serve the same, and the return thereof, the filing of an affidavit as to the non-residence of certain defendants, and the due publication of notice to the non-resident defendants, seem to have been taken in substantial compliance with the statute; also the continuance, the appointment of a guardian *ad litem* for the minors, and the hearing, decree, sale and confirmation thereof, appear to have been regular. *Vance's Heirs v. Maroney*, 4 Colo. 47; *Rowand v. Carrol*, 81 Ill. 224; *Tibbs v. Allen*, 27 Ill. 124.

One objection only requires particular notice. Section 103, chapter 90, Revised Statutes, aforesaid, provides in substance that if, in cases where notice by publication is permitted, the first publication be not at least sixty days before the day named in the summons, the cause shall stand continued until the next succeeding term of the court. The summons in this case was issued early in April, and was made returnable the first Monday of May; and, as sixty days had not elapsed, the cause stood continued until the next succeeding term in June, and thereafter, and on June 23d, the court ordered and decreed the sale of the real estate. It is argued with some force that still another continuance to the July term should have been granted, as there were not sixty days intervening between the issuance of the summons and the first day of

the June term. But the statute does not so provide; and while in all proceedings dependent upon constructive notice, and especially where the rights of minor heirs are involved, the statutes should receive strict construction, and be strictly pursued in all matters of substance, still we do not feel called upon to add to the statute something which it does not contain, either in words or by necessary implication, in order to overthrow this judgment. Public policy and common justice require that judgments of courts of record of long standing, and upon the faith of which property rights have been acquired, should not be disturbed, except for the most manifest error.

The former opinion is withdrawn, and the judgment of the county court is accordingly affirmed.

*Affirmed.*